**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

HENRIETTA DARPOH

and

VIRGINIE MASSEH

and

EMMANUEL ESIANOR

*INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED*

Plaintiffs,

v.

YESCARE CORP.

and

CHS TX, INC. D/B/A YESCARE

Civil Action No.: 1:25-cv-00072-ABA

**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

1. This is a Fed. R. Civ. P. 23 class action brought by Plaintiffs Henrietta Darpoh ("Plaintiff Darpoh"), Virginie Masseh ("Plaintiff Masseh") and Emmanuel Esianor (collectively, "Plaintiffs"), individually and on behalf of the members of the proposed class identified below.

2. Plaintiffs and the proposed class members bring this action against their current and/or former employer Defendants Yescare Corp. ("Defendant YCC" or "Yescare Corp.") and CHS TX, Inc. d/b/a Yescare ("Defendant CHS" or "Yescare Inc.") (collectively, "Defendants"), seeking any and all available relief under the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401, *et seq.* ("MWHL") and the Maryland Wage Payment Collection Law, Md. Code

Ann., Lab. & Empl. § 3-501, *et seq.* ("MWPCL") for the period of three years from the filing of this Complaint through the present ("relevant period").

3. Defendants have contracted with the State of Maryland and/or the Department of Public Safety and Correctional Services to provide medical care to prisoners at all detention facilities within the State of Maryland.

4. During the relevant period, Defendants had uniform timekeeping policies for their hourly employee workforce, including Plaintiffs and the members of the proposed class, which included, *inter alia*, clocking in at a time clock in a specific section of their worksites.

5. During the relevant period, Defendants routinely failed or refused to compensate their hourly employee workforce, including Plaintiffs and the members of the proposed class, for hours of work which included, *inter alia*, walking from the parking lot of their respective worksites to the time clock within the worksite.

6. Plaintiffs and the members of the proposed class bring this action against Defendants because of this routine failure or refusal to properly compensate their hourly employee workforce as a class action pursuant to the MWPCL and MWHL for: unpaid wages; unpaid overtime premium compensation; liquidated damages; attorneys' fees and costs; and/or any such other relief as this Court may deem appropriate.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because: (1) all Plaintiffs are citizens of the State of Maryland, and all Defendants are citizens of the State of Tennessee; and (2) the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the State of Maryland, and Defendants have had substantial and systematic contacts within the State of Maryland within the relevant statutory periods.

## PARTIES

9. Defendants are joint employers and/or a single integrated enterprise that "has provided expert medical, dental and behavioral health services to more than 1,000,000 patients at 475 correctional facilities across the country through custom-designed healthcare programs."[1]

10. At the head of this group is Yescare Corp., a stock corporation organized under the laws of the State of Texas with a principal place of business in the State of Tennessee.

11. Defendants jointly exercised the power to, directly or indirectly, direct, control, or supervise their hourly employee workforce, including Plaintiffs and the members of the proposed class.

12. Defendants jointly exercised the power to, directly or indirectly, modify the terms or conditions of their hourly employee workforce, including Plaintiffs and the members of the proposed class.

13. Yescare Corp. directly or indirectly controls Yescare, Inc. in this matter. In turn, YesCare Inc. controlled the material aspects of Plaintiff Masseh's employment.

14. Defendants jointly, formally, or a matter of practice, determine, share, or allocate responsibility over functions ordinarily carried out by an employer as it relates to their hourly employee workforce, including Plaintiffs and the members of the proposed class.

[1] https://www.yescarecorp.com/about (last accessed November 8, 2024).

15. Defendants jointly perform related activities under unified operations or common control for a common business purpose.

16. At all times relevant, Defendants jointly exercised control over the management of Plaintiffs and the members of the proposed class, including, but not limited to, setting their compensation, job duties, and rules for employment.

17. Plaintiff Darpoh is a resident of the State of Maryland.

18. Plaintiff Masseh is a resident of the State of Maryland.

19. Plaintiff Darpoh was employed by Defendants in the State of Maryland from January 2022 to August 8, 2023.

20. Plaintiff Masseh was employed by Defendants in the State of Maryland from April 2021 through approximately August of 2024. As explained below, Defendants jointly employed Plaintiff Masseh with Bethel Health Services, LLC ("Bethel").

## GENERAL ALLEGATIONS

21. Defendants provide medical care for incarcerated individuals in the custody of the Department of Public Safety and Correctional Services ("DPSCS") for the State of Maryland.

22. Defendants contracted with DPSCS to provide healthcare services and were required under their contract to maintain minimum staffing levels or incur liquidated damages. To meet these contractual staffing obligations, Defendants utilized staffing agencies (including Bethel) to supply additional healthcare professionals who reported directly to Defendants, received direction from Defendants' supervisors, and worked side-by-side with Defendants' own employees, thus establishing a joint employment relationship.

23. Defendants and staffing agencies, including Bethel, jointly exercised the power to, directly or indirectly, direct, control, or supervise their hourly workforce, including Plaintiffs and the members of the proposed class.

24. Defendants and staffing agencies, including Bethel, jointly exercised the power to, directly or indirectly, modify the terms or conditions of their hourly workforce, including Plaintiffs and the members of the proposed class.

25. Defendants and staffing agencies, including Bethel, jointly, formally or as a matter of practice, determine, share or allocate responsibility over functions ordinarily carried out by an employer as it relates to their hourly workforce, including Plaintiffs and the members of the proposed class.

26. Defendants and staffing agencies, including Bethel, jointly perform related activities under unified operations or common control for a common business purpose.

27. Defendants hired, staffed, and maintained an hourly workforce that provided these medical care services to incarcerated individuals in DPSCS custody.

28. Plaintiffs and the members of the proposed class were hourly employee workforce members working for the benefit of Defendants by providing medical care, ancillary medical services, and other services Defendants contracted with the State of Maryland to provide.

29. As a routine function of Plaintiffs' and the proposed class members' workday, Plaintiffs and the proposed class members would be required by Defendants to arrive at various different detention centers, jails, and prisons across the State of Maryland and provide medical care services at a clinic or other worksite within the detention center, jail, or prison.

30. All of the detention centers, jails, or prisons which Plaintiffs and the proposed class members worked for the benefit of Defendants had security protocols and procedures in place related to the entry and exit from the respective detention center, jail, or prison.

31. Each detention center, jail, or prison had a security checkpoint at its respective entrance or entrances where Plaintiffs and the proposed class members would sign in, noting the time and date, and proceed through the security checkpoint into the detention center, jail, or prison.

32. Each detention center, jail, or prison has security cameras that capture the exit, entry, and daily activities of each individual in the detention center, jail, or prison, including Plaintiffs and the members of the proposed class.

33. From this initial security checkpoint, Plaintiffs and the members of the proposed class would walk for several minutes, sometimes as long as fifteen (15) minutes, from the initial security checkpoint to the time clock at a clinic or other worksite within the detention center, jail, or prison.

34. Plaintiffs and the members of the proposed class would then "clock in" at the time clock located at the clinic or other worksite within the detention center, jail, or prison.

35. Defendants failed or refused to compensate Plaintiffs and the members of the proposed class for this time which Plaintiffs and the members of the proposed class were required by Defendants to be onsite at the detention center, jail, or prison which was Plaintiffs' and the proposed class members' prescribed workplace.

36. Further, Defendants required Plaintiffs and the proposed class members to be on duty from the moment that they entered the detention center, jail, or prison.

37. This is evidenced by the fact that Plaintiffs would enter the facility in their uniforms, and would frequently be required to respond to questions or perform other work prior to clocking in.

38. Additionally, Defendants had a routine policy and practice of automatically deducting from their hourly employees' compensation, including Plaintiffs and the members of the proposed class, compensation a thirty (30) minute interval for a lunch or meal break.

39. However, Plaintiffs and the members of the proposed class routinely worked through their thirty (30) minute lunch or meal break.

40. Defendants were actually and/or constructively aware that Plaintiffs and the members of the proposed class routinely worked through their thirty (30) minute lunch or meal break.

41. Notwithstanding this awareness, Defendants failed or refused to compensate Plaintiffs and the members of the proposed class for the thirty (30) minute lunch or meal break which they worked through.

42. During the relevant period, Defendants maintained a meal period policy, which stated in part:

> Meal periods will be taken on a consistent basis unless there is an unusual operational, patient care or security need. If an hourly employee works part or all of a meal period, the hourly employee is required to complete and sign the time keeping adjustment form to record the meal period as "hours worked". If the form is completed and approved, the employee will be paid for the entire meal period. **Any hourly employee who works through the meal period or has punched out for the meal and is called back to work during that time, must complete an adjustment form in order to be paid for that time. Adjustment forms must be completed the same day**. YesCare does not permit anyone the authority to request or require an employee to work during a meal period without pay. Any such request must be reported to Human Resources.

43. At the end of each shift, Plaintiffs and the members of the proposed class would again use the same time clock to clock out of their shift.

44. Plaintiffs and the members of the proposed class would then be required by Defendants to walk back through the worksite to the initial security checkpoint and exit the detention center, jail, or prison.

45. Defendants failed or refused to compensate Plaintiffs and the members of the proposed class for the time during which Plaintiffs and the members of the proposed class were required by Defendants to be onsite at the detention center, jail, or prison, which was Plaintiffs' and the proposed class members' prescribed workplace.

46. For all Plaintiffs[2], Defendants:

a. Had the power to hire and fire them;

b. Supervised and controlled their work;

c. Controlled their work schedule, including automatically deducting time from lunch whether or not Plaintiff was able to take a lunch break;

d. Determined the rate and method of payment;

e. Maintained their employment records;

f. Control the hours they worked, including controlling the method in which they clocked in and out for purposes of payroll;

g. Control which location the Plaintiffs were assigned to work.

47. Defendants' systematic practices deprived Plaintiffs and the proposed class members of rightful compensation for all hours worked. From requiring employees to perform duties prior to clocking in and after clocking out, to automatically deducting time for meal breaks that were routinely worked through, Defendants knowingly engaged in practices that violated wage

[2] Defendants employed Plaintiff Masseh through a staffing agency, Bethel Health Services, LLC.

and hour laws. These policies and practices demonstrate a common practice of violating the rights of Plaintiffs and class members to be compensated for all required work, including time spent on duty before and after clocking and during unpaid meal breaks. Plaintiffs and the proposed class members are entitled to full compensation for their uncompensated work, including all time spent performing duties onsite, and damages for Defendants' failure to comply with applicable labor laws.

## CLASS DEFINITION & ALLEGATIONS

48. In accordance with Federal Rule of Civil Procedure 23, Plaintiffs bring their claims against Defendants for their violation of the MWHL and the MWPCL on behalf of themselves and all others similarly situated, for relief to redress and remedy the common failure or refusal to compensate Plaintiffs and the members of the proposed class for all time worked, including times when they were required to be at Defendants' prescribed workplace (*i.e.*, detention centers, jails, or prisons).

49. Plaintiffs propose two subclasses, as outlined below.

50. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of the Plaintiffs and the putative class members.

51. The class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in terms of numerosity, commonality, typicality, adequacy, predominance, and superiority.

**Wage Class A:**

> All current and former non-exempt employees or workers who, at any time from three years prior to the filing of the Complaint through the date of trial, were required by Defendants to be physically present on-site or at a prescribed workplace—that is, any detention center, jail, or prison operated by the State of Maryland where Defendants were contracted to provide medical care—and

who were required to be on-site before clocking in or after clocking out, including to undergo security screening, walk to or from their assigned posts, or wait to be released from the facility.

**Wage Class B:**

All current and former non-exempt employees or workers who, at any time during the class period, were subject to Defendants' meal period policy and, on one or more workdays, had time excluded from their pay for a meal break but did not take a complete uninterrupted meal break, including days when they remained on-call, performed work-related tasks, or were required to return to work before the end of the deducted break.

52. The putative class may be referred to herein as the "Wage Class A" or "Wage Class B", or collectively as the "Wage Classes" or "Putative Class."

53. Plaintiffs reserve the right to redefine either Wage Class before or at class certification and thereafter as necessary.

54. Plaintiffs reserve the right to create and define sub-classes before class certification and thereafter as necessary.

55. Both of the Wage Classes are readily ascertainable. The number and identity of class members may be determined from Defendants' records, which upon information and belief, are maintained for a number of years after the record is made.

56. Further, Defendants, as a contractor working for the benefit of the State of Maryland pursuant to a service contract, is and was required to maintain records regarding its workforce and reported the same to the State of Maryland, which may also have information regarding the number and identity of class members.

57. **Federal Rule of Civil Procedure 23:**

a. ***Numerosity*:** The Wage Classes are so numerous that joinder of all class members is impracticable, and the disposition of these individuals' claims as a class will benefit both the parties and the Court. The Wage Class members may be notified of the pendency of this action by

published and/or mailed notice. While the exact number of Wage Class members is unknown to Plaintiffs at this time, upon information and belief, the Wage Class comprises at least sixty (60) persons.

b. ***Commonality***: Plaintiffs and the Wage Classes which they seek to represent have all been harmed by Defendants in that they were all unlawfully deprived of wages earned for hours of work. The common questions for the Wage Classes include, but are not limited to:

i. Whether Defendants' refusal to compensate Plaintiffs and the members of the Wage Classes for the entire time that they were required to be present at Defendants' prescribed workplace was lawful;

ii. Whether there exists a *bona fide* dispute as to the unpaid amounts due to Plaintiffs and the members of the Wage Classes;

iii. Whether Defendants suffered or permitted Plaintiffs and the members of the Wage Classes to work through their meal breaks without compensation by virtue of their automatic meal period deduction policy.

c. ***Typicality***: Plaintiffs and the members of the Wage Classes have been subject to the same common unlawful compensation scheme of Defendants and have thus suffered similar harms. Plaintiffs' claims are typical of the claims that any member of the Wage Classes could bring in a separate action.

d. ***Adequacy of Representation***: Plaintiffs are able to fairly and adequately protect the interests of all members of the Wage Classes. Further, there are no known conflicts of interest between Plaintiffs and the members of the Wage Classes. Plaintiffs have retained counsel who are experienced and competent in complex class-action litigation.

e. ***Predominance and Superiority***: The common questions identified above predominate over any individual issues and will lead to the generation of common answers through class-wide proof. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individual actions involve. Because the losses, injuries, and damages suffered by each individual class member are small in the sense pertinent to class action analysis, the expense and burden of individual litigation would make it extremely

> difficult or impossible for the individual class members to redress wrongs done to them.

58. Likewise, important public interests will be served by addressing the matter as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided using common, class-wide proof. In addition, if appropriate, the Court may fashion methods to manage this action as a class action efficiently. Pursuing this action on behalf of a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the Wage Classes. Class action resolution of these claims will benefit both the parties and the Court, streamline adjudication of common issues, and promote the fair and efficient resolution of this controversy.

## COUNT I:
## VIOLATION OF THE MARYLAND WAGE AND HOUR LAW

59. Plaintiffs reallege and reassert each and every allegation set forth above as if each were set forth herein.

60. Defendants were an "employer" for all Plaintiffs and the members of the Wage Classes pursuant to Md. Lab. & Empl. Code Ann. § 3-401(b).

61. Plaintiffs and the members of the Wage Classes were individuals employed by Defendants pursuant to Md. Lab. & Empl. Code Ann. § 3-101(c)(1) – (2).

62. Plaintiffs and the members of the Wage Classes were individuals compensated with an hourly wage promised to them by Defendants for the performance of work for their benefit.

63. Plaintiffs and the members of Wage Class A were required by Defendants to be on duty or at Defendants' prescribed workplace (*i.e.*, detention centers, jails, or prisons) prior to clocking in and after clocking out at the Defendants' time clock utilized for tracking certain hours of work. *See* COMAR § 9.12.41.10(A).

64. Defendants were actually or constructively aware that Plaintiffs and the members of Wage Class A were required to be on duty or be present at Defendants' prescribed workplace (*i.e.*, detention centers, jails, or prisons) prior to clocking in and after clocking out at Defendants' time clock.

65. At the beginning of their workday, Plaintiffs and the members of Wage Class A would be required to walk from the parking lot of Defendants' prescribed workplace (*i.e.*, detention centers, jails, or prisons) through a security checkpoint at the entrance of the prescribed workplace (*i.e.*, detention centers, jails, or prisons) and then walk to the time clock which is typically placed in or near the clinic of the prescribed workplace (*i.e.*, detention centers, jails, or prisons) to clock in for their shift.

66. At the end of their workday, Plaintiffs and the members of Wage Class A would be required to clock out at the time clock typically placed in or near the clinic of the prescribed workplace (*i.e.*, detention centers, jails, or prisons) to end their shift and then walk through their prescribed workplace (*i.e.*, detention centers, jails, or prisons) to the security checkpoint at the entrance of the prescribed workplace (*i.e.*, detention centers, jails, or prisons) and then proceed through the same back to their vehicle.

67. The process of entering and exiting the prescribed workplace (*i.e.*, detention centers, jails, or prisons) would typically be completed within seven (7) to fifteen (15) minutes each time.

68. Defendants refused or failed to compensate Plaintiffs and the members of the Wage Class A with any wages for hours of work for the process of entering and exiting the prescribed workplace (*i.e.*, detention centers, jails, or prisons).

69. Further, Plaintiffs and the members of the Wage Class B were subject to Defendants' common policy of automatically deducting thirty (30) minutes from their compensation each day that they performed work for the benefit of Defendants for a meal period where Plaintiffs and the members of the Wage Class B were supposed to perform no work duties.

70. However, Plaintiffs and the members of the Wage Class would typically perform work duties during this meal period.

71. Defendants were actually or constructively aware that Plaintiffs and the members of the Wage Class would typically perform work duties during this thirty (30) minute meal period.

72. Notwithstanding this awareness, Defendants refused or failed to compensate Plaintiffs and the members of the Wage Class with any wages for hours of work for performing work duties during their meal period. *See* COMAR § 9.12.41.10(B).

73. Defendants are not small employers as defined by the MWHL. *See* Md. Lab. & Empl. Code Ann. § 3-413(a)(3).

74. During the relevant period in 2021, the State of Maryland minimum wage was $11.75 per hour. *See* Md. Empl. Code Ann. § 3-413(c)(1)(iv) (2021).

75. During the relevant period in 2022, the State of Maryland minimum wage was $12.50 per hour. *See id.* at (c)(1)(v).

76. During the relevant period in 2023, the State of Maryland minimum wage was $13.25 per hour. *See id.* at (c)(1)(vi).

77. During the relevant period in 2024, the State of Maryland minimum wage was $15.00 per hour. *See* Md. Empl. Code Ann. § 3-413(c)(1)(ii).

78. At minimum, Plaintiffs and the members of the Wage Class are entitled to the State of Maryland minimum wage for the hours of work, described herein, which Defendants refused or failed to compensate them for.

79. In addition to these amounts owed, Plaintiffs are entitled to liquidated damages in an amount equal to the amount of unpaid wages. Md. Lab. & Empl. Code Ann. § 3-427(a)(1).

80. Defendants have no good faith excuse or mitigating circumstance for failing to properly compensate Plaintiffs and the members of the Wage Class for their earned and owed wages.

## COUNT II: VIOLATION OF THE MARYLAND WAGE PAYMENT COLLECTION LAW

81. Plaintiffs reallege and reassert each and every allegation set forth above as if each were set forth herein.

82. A "wage" means "all compensation that is due to an employee for employment". Md. Lab. & Empl. Code Ann. § 3-501(c)(1).

83. A "wage" includes "any…remuneration promised for service." *Id.* at (c)(2)(v)

84. Further, an employee's wage is to be paid "at least once in every 2 weeks or twice in a month." Md. Lab. & Empl. Code Ann. § 3-502(a)(1)(ii).

85. As alleged in Count I, Defendants refused or failed to compensate Plaintiffs and the members of the Wage Class their entire wage for hours of work performed for Defendants' direct benefit.

86. Accordingly, Plaintiffs and the members of the Wage Class are owed, in the alternative to the State of Maryland minimum wage for the respective time periods, the

remuneration that they were promised for their services and hours of work performed for the direct benefit of Defendants.

87. It has been more than two weeks since Defendants were required to have paid all wages to Plaintiffs and the members of the Wage Class. *See* Md. Lab. & Empl. Code Ann. § 3-507.2(a).

88. There is no *bona fide* dispute as to why Defendants have failed or refused to compensate Plaintiffs for the hours of work described in Count I and throughout this Complaint.

89. In addition to the difference between the amount owed and the amount paid, Plaintiffs and the members of the Wage Class are entitled to liquidated damages equal to three times the amount of unpaid wages. *See* Md. Lab. & Empl. Code Ann. § 3-507.2(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and behalf of all members of the Wage Classes, request the following relief:

a. An order certifying this action as a Fed. R. Civ. P. 23 class action on behalf of the Wage Class A and Wage Class B;

b. An order designating the Plaintiffs as the representatives of the Wage Class A and Wage Class B and appointing Plaintiffs' counsel as class counsel for Wage Class A and Wage Class B;

c.

d. An order finding that Defendants violated the MWHL and MWPCL;

e. An order finding that Defendants' violation of the MWHL and MWPCL were not the product of good faith or a bona fide dispute;

f. An order finding Defendants' violations of the MWHL and MWPCL were willful;

g. Judgment against Defendants in favor of Plaintiffs and the members of Wage Class A and Wage Class B equal to any and all unpaid wages, including overtime compensation;

h. An award against Defendants in favor of Plaintiffs and the members of Wage Class A and Wage Class B in the full amount of available liquidated damages and penalties as provided under the MWHL and MWPCL;

i. An award in the amount of all costs and attorneys' fees incurred in prosecuting these claims;

j. A jury trial on any and all applicable claims; and

k. Any such other and further relief as this Court deems appropriate.

Respectfully submitted,

/s/ *Edith K. Thomas*
Edith K. Thomas, Esq. (Bar No. 30295)
Thomas J. Eiler, Esq. (Bar No. 30622)
Michael K. Amster, (Bar No. 18339)
Robert W.T. Tucci (Bar No. 31356)
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave., Suite 400
Silver Spring, MD 20910
(301) 587-9373 (ph)
ethomas@zagfirm.com
teiler@zagfirm.com
mamster@zagfirm.com
rtucci@zagfirm.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on this 30th day of May 2025, a true and correct copy of the foregoing was filed electronically and served on all counsel of record via this Court's CM/ECF system.

________________________
Edith K. Thomas