**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| HENRIETTA DARPOH, *et al.* | * | |
| | * | |
| *INDIVIDUALLY AND ON BEHALF OF* | * | |
| *ALL OTHERS SIMILARLY SITUATED* | * | |
| | * | |
| PLAINTIFFS, | * | Case No.: 1:25-cv-00072-ABA |
| | * | |
| v. | * | |
| | * | |
| YESCARE CORP., *et al.* | * | |
| | * | |
| DEFENDANTS. | * | |

**************************************************************************

**DEFENDANTS' SUPPLEMENTAL OPPOSITION
TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

The Maryland Department of Public Safety and Correctional Services ("DPSCS") sign in/sign out sheets cannot serve as representative proof of compensable time because any effort to use them would immediately trigger individualized, facility-specific, and day-specific inquiries that defeat predominance and render a class action unmanageable. Indeed, the sign in/sign out sheets are third party, security purpose logs that are incomplete, inconsistent across facilities and time, and do not record the beginning or end of compensable work as a matter of function or design. The State's own policy required sign-in "in addition to using the biometric timekeeping system," expressly for site security, and the Attorney General's production confirms several institutions did not retain the requested records, leaving facility- and period-level gaps and variable, handwritten, often-rounded entries that are not reliable indicators of compensable boundaries. ECF No. 27-8 at 24; **Ex. 1, Correspondence from DPSCS.**

Plaintiffs' stop-gap proposal to "supplement" company time data with these third-party logs and to generate facility-level averages later through an unperformed study only underscores the problem, because Rule 23(b)(3) demands common, admissible proof capable of producing

common answers in one stroke, not promises to smooth over undisputed, record-level variation through prospective estimation. The combination of non-timekeeping logs, missing datasets, and facility- and day-specific entry sequences ensures person-by-person mini-trials on whether log entries correlate to compensable time and by how much, which defeats predominance and superiority.

Plaintiffs cannot bridge the evidentiary gap left by the absence of these records with yet-to-be provided evidence from their expert, which would fail to account for individualized preliminary and postliminary duties that vary by position. Indeed, Fed. R. Civ. P. Rule 23(b)(3) places the burden on Plaintiffs to "affirmatively demonstrate" predominance and superiority with admissible, common proof. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–52 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–38 (2013).

For those reasons, and those discussed in Defendants' Opposition to Plaintiffs' Motion for Rule 23 Class Certification ("Defendants' Opposition") (ECF No. 32), Plaintiffs cannot carry their burden to establish the requirements under Fed. R. Civ. P. 23.

**A.  The DPSCS security logs are not representative proof.**

DPSCS required, "in addition to using the biometric timekeeping system, all Staff shall sign in and out on forms provided by the Department whenever such person enters or leaves a work site," and it specified the procedure "is for site security purposes and is mandatory." ECF No. 27-8 at 24. As such, these third-party logs are not accurate timekeeping records and were not designed to capture compensable work boundaries. Plaintiffs seek to repurpose security logs into common time evidence, but the documents, by design, only reflect rounded times of when individuals wrote entries on security sheets, which were not maintained by YesCare, and that do not demarcate the start or end of compensable work. *See* **Ex. 2, Examples of Rounding.**

Plaintiffs' Reply to their Motion ("Reply") confirms the same posture: they propose to "supplement[]" Defendants' timekeeping records "as needed by DPSCS entry and exit records," and to "estimate" average unpaid time between sign-in and clock-in and between clock-out and sign-out at each facility. ECF No. 34 at 13, 18. Those concessions reinforce the problem. The sign-in sheets are neither comprehensive, nor consistent across the 22 institutions; they are third-party logs missing segments, and their relationship to alleged compensable time varies by site—and by day—given the State-controlled queues, holds, door-buzz sequences, and intermediate stops that Plaintiffs themselves describe.

The State's production confirms the logs are materially incomplete and uneven across facilities and time. DPSCS advised "several institutions did not retain the requested records," including Baltimore Central Booking & Intake Center, Chesapeake Detention Facility, MRDCC, Metropolitan Transition Center, and the Youth Detention Center, while the Attorney General produced only redacted subsets tied to the named Plaintiffs and acknowledged minimal or no appearances at certain sites for certain years. **Ex. 1; Ex. 2.** Those gaps cannot be cured by arithmetic and preclude any claim the logs supply common, comprehensive proof.

The sign-in sheets are handwritten, vary in format across institutions, and frequently include entries that are difficult to decipher, if decipherable at all, with numerous entries that appear rounded to five- or ten-minute increments rather than precise timestamps, which further undermines reliability and uniformity and heightens the need for individualized examination of particular entries and days. **Ex. 2, Ex. 3, Examples of Illegible Entries.** On their face, these characteristics further undermine the logs' suitability as common proof of compensable work time and heighten the need for individualized examination of particular entries and days. *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019) (rejecting certification where the record evidence

did not consist of reliable indicators of compensable work and would require individualized inquiry). Similarly, the Fourth Circuit rejects certification premised on unreliable indicators of compensable work requiring individualized inquiry, and this record presents precisely that posture. *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 679 (4th Cir. 2024). On this record, whether log-to-clock intervals reflect compensable work turns on facility-specific layouts, queues, movement holds, and intermediate steps, not on a common practice that a log can measure. Accordingly, class certification should be denied.

### B. The DPSCS logs fail to satisfy plaintiffs' burden of affirmatively establishing predominance.

The predominance requirement is not limited to liability issues; it also applies to damages because any supposed efficiencies of a class action would be nullified when "[q]uestions of individual damage calculations . . . overwhelm questions common to the class." *Behrend*, 569 U.S. at 34. *Behrend* requires a damages methodology measuring only those damages attributable to Plaintiffs' theory and fitting the evidentiary record. Plaintiffs propose no coherent, admissible method to quantify unpaid minutes accounting for person-by-person and facility-by-facility variability in pre- and post-clock intervals that the record shows are driven by queues, officer availability, movement holds, distances, key/equipment stops, clock placement, and layout changes. Because the supposed measuring stick—the DPSCS security log entries—were created for security, are incomplete and often rounded, and were placed prior to differing, State-controlled entry sequences, any damages trial would devolve into mini-trials to decide if, and how much, compensable time incurred for each person on each day, which Rule 23(b)(3) does not permit.

Considering these issues, the predominance requirement under Rule 23(b)(3) is not satisfied. The individualized nature of the evidence required to establish both liability and damages, coupled with the variability in pre- and post-clock activities across different facilities, precluding the use

of common proof. Consequently, the proposed class action would necessitate numerous mini-trials to resolve these individualized issues, thereby nullifying any efficiencies a class action might otherwise provide. Therefore, class certification should be denied.

### C. Plaintiffs cannot fill evidentiary gaps with yet-to-be provided expert testimony utilizing averages.

Plaintiffs have not proffered a completed time-and-motion study. Dr. Radwin's declaration (ECF No. 28-9) merely outlines tools he *could* deploy in the future—video review, stopwatches, predetermined motion-time systems, floor-plan measurements, and sign-in sheets—to generate facility-level averages, which is precisely the sort of later provided "evidence" posture the Fourth Circuit rejected in *Windham v. Am. Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977). That alone defeats Plaintiffs' burden under Rule 23(b)(3), particularly when access to State-owned facilities is uncertain and, for the Maryland Reception, Diagnostic, and Classification Center, known as MRDCC, replication of historical conditions is impossible, after detainees were transferred out of the facility as of December 4, 2025 due to public health concerns with respect to the physical structure of the facility. **Ex. 4, DPSCS Press Release.**

Even if it is taken at face value, the averaging proposal does not fit this record. It does not separate employer-required tasks from employee choices on a given day, capture day-specific operational conditions such as counts, lockdowns, staffing anomalies, or role-based differences in key/equipment issuance, returns, and intra-day redeployments, and would smooth over the very factors the record shows determine whether any alleged off-the-clock time existed and how long it lasted for any person on any day. On this record, an averaging overlay would invite mini-trials to test "representativeness," not provide common answers in one stroke.

**D. Superiority and manageability collapse under the multi-dataset merge and missing records.**

Rule 23(b)(3) also requires a class action to be "superior" to other methods, taking into account manageability. Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs propose to merge multiple systems and third-party records—Defendants' Kronos data, DPSCS sign-in logs, and, for a sizable subset of putative members, payroll records of non-party Bethel—to derive person-by-person wage shortfalls by facility, by date, and by role, using facility-level averages that this record cannot support.

For these reasons, superiority is lacking as Plaintiffs' plan requires individualized, back-end adjudications to reconcile YesCare's timekeeping with third-party DPSCS security logs and, for a sizable subset, non-party Bethel payroll records, in order to decide person-by-person whether, when, and how much compensable time occurred under facility- and day-specific conditions. The record's incompleteness, variable formats, and rounding amplify those case-by-case determinations. On this posture, a class trial would devolve into reconstructing individualized work intervals from logs never designed for timekeeping, which the Fourth Circuit's manageability guidance counsels is not "superior" under Rule 23(b)(3). *Windham*, 565 F.2d at 66-67; *see also Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1226 (9th Cir. 2024) ("These individual questions are not the sort of 'plug-and-play' determinations that we have held may not defeat class certification. . . . Rather, these individualized questions would have to be resolved through a series of mini-trials, undermining the 'efficiency and economy' that Rule 23 was designed to promote.").

**E. *Tyson Foods v. Bouaphakeo* is Inapposite**

*Tyson Foods, Inc. v. Bouaphakeo* does not aid Plaintiffs. 577 U.S. 442 (2016). *Bouaphakeo* involved a single facility, a uniform donning and doffing practice, and a completed time-study the defendant-employer did not challenge under *Daubert* and thus constituted a relatively uniform

6

record. *Bouaphakeo*, 577 U.S. at 455–58. Here, Plaintiffs offer no completed study and thus no *Daubert*-tested methodology. Instead, they propose to later generate facility-level averages, using third-party, handwritten, and oft-missing security logs whose placement in the entry sequence varies by institution and over time. On such a record, Plaintiffs cannot show "each class member could have relied on that sample to establish liability if he or she had brought an individual action[,]" as *Bouaphakeo* requires. *Id*. at 455.

Indeed, the distinguishing facts are confirmed by Plaintiffs' own testimony and filings. Plaintiffs worked at a constellation of DPSCS institutions with distinct entry sequences, clock placements, and operational controls; some employees performed pre-clock tasks such as key or equipment retrieval while others did not; one named Plaintiff traversed multiple facilities in a single day, repeating the State-mandated entry sequence multiple times. ECF No. 27 at 7-8; ECF No. 32-3 at 14-16; ECF No. 32-3 at 18-24; ECF No. 32-3 at 26-27; ECF 32-3 at 32; ECF No. 32-9 at 11-13, ECF No. 32-9 at 23-27; ECF No. 32-10 at 13-17, ECF No. 32-10 at 19-21. Those are not trivial differences; they are the answer to whether, when, and for how long alleged off-the-clock activities occurred—and thus whether any time was compensable at all on a given day for a given person. Averages layering a single facility-level constant onto every timecard cannot answer, with common proof, how long any particular class member's pre- and post-shift time was.

Plaintiffs' Reply confirms they intend to "supplement[]" Defendants' timekeeping records with DPSCS entry/exit logs and to estimate' average pre- and post-shift minutes by facility. ECF No. 34 at 13. That posture concedes the absence of common, completed measurement and, instead, proposes to smooth over the very site- and day-specific conditions determining compensability, as well as duration, and sharpens the distinction between this case and *Bouaphakeo*. Plaintiffs insist uniform "entry sequences" render liability common, but they simultaneously acknowledge the

subsequent steps, their ordering, their timing, and the timeclock destination vary across the 22 institutions, and they will "estimate" average minutes per facility using tools that, by design, smooth over those differences. That is the opposite of the *Bouaphakeo* posture. In *Bouaphakeo*, the issue was whether a conceded task took a certain amount of time in a single plant. Here, the issues are whether a collection of State-controlled conditions and individualized choices produced compensable work time at all for any person on any given day, and how long such work lasted, across two dozen facilities where clock placements and access controls changed over time.

Accordingly, because Plaintiffs have neither a completed, *Daubert*-tested time study, nor a uniform, single-facility record on which representative evidence could be weighed, they cannot satisfy *Bouaphakeo's* threshold requirement that each class member could have relied on their proposed sample to establish liability in an individual action, and the sign-in/sign-out logs—incomplete, handwritten, and variably situated across 22 State-controlled entry sequences—cannot fill that void.

### F.  Conclusion

The DPSCS sign-in/sign-out records do not constitute representative proof sufficient to establish predominance or superiority under Rule 23(b)(3). For four independent reasons, the record confirms Plaintiffs cannot serve that function.

First, the logs were designed for site security, not timekeeping—DPSCS policy required sign-in "in addition to using the biometric timekeeping system"—and their rounded, handwritten entries do not capture compensable work boundaries, so they cannot supply a common evidentiary baseline for liability across the putative class. Second, the records are materially incomplete: multiple DPSCS institutions did not retain the requested logs, and the Attorney General produced only redacted subsets tied to the named Plaintiffs, leaving facility- and period-level gaps arithmetic

cannot cure, thus foreclosing any claim the logs supply common, comprehensive proof for the putative class as a whole. Third, even with logs that exist, converting log-to-clock intervals into compensable time immediately triggers individualized, facility- and day-specific inquiries about queues, movement holds, door-buzz sequences, clock placement, and equipment stops and those material nuances vary by institution, day, and each employee's role, demanding precisely the mini-trial adjudication that Rule 23(b)(3) precludes. Fourth, Plaintiffs' proposed remedy—*i.e.*, supplementing logs with facility-level averages from Dr. Radwin's as-yet-uncompleted time-and-motion study—widens the evidentiary gap, rather than bridging it; Plaintiff's proposed expert only volunteers tools he *may* deploy in the future, not a completed, *Daubert*-tested methodology, and therefore falls fatally short of the single-facility, uniform-practice, completed study *Tyson Foods, Inc. v. Bouaphakeo* required.

For these reasons, and the reasons more fully set forth in Defendants' Opposition, Plaintiffs have failed to affirmatively demonstrate—as Rule 23(b)(3) and *Wal-Mart Stores, Inc. v. Dukes* require—common questions predominate over individual ones or a class action is superior to other available methods of adjudication. The Court should therefore reject Plaintiffs' reliance on the DPSCS sign-in/sign-out sheets and Plaintiffs' prospective averaging proposal as common proof, and thus deny class action certification.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

/s/_____
Evan L. Conder, Bar No. 21907
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
1 South St., Suite 1800
Baltimore, MD  21202
Telephone: 410-752-1040
Facsimile: 410-752-8861
evan.conder@ogletree.com

*Attorney for Defendants*

/s/_____
Patrick F. Hulla (*admitted pro hac vice*)
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
700 W. 47th St., Suite 500
Kansas City, MO  64112
Telephone: (816) 410-2226
Facsimile: (816) 471-1303
patrick.hulla@ogletree.com

*Attorney for Defendants*

Dated: March 24, 2026

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 24th day of March, 2026, Defendants' Supplemental Opposition to Plaintiffs' Motion for Rule 23 Class Certification was electronically filed and served thereby upon all counsel of record.

*/s/*
Evan L. Conder